1

2

3                   **UNITED STATES DISTRICT COURT**

4                 **NORTHERN DISTRICT OF CALIFORNIA**

5                       **SAN JOSE DIVISION**

6

7   FITEQ INC,                              Case No.  13-cv-01946-BLF

            Plaintiff,
8
                                            **ORDER REGARDING MOTIONS** *IN*
9        v.                                 *LIMINE*

10  VENTURE CORPORATION, et al.,            [Re: ECF 356, 358, 360-367, 394]

            Defendants.
11

12

13          Plaintiff Fiteq Inc. brings this lawsuit against its former partner, Venture Corporation, and

14  Cebelian, a wholly-owned subsidiary of Venture (collectively "Venture"), alleging three breach of

15  contract claims, fraud in the inducement, and fraud. *See* Second Amended Complaint (SAC) ¶¶

16  202-243, ECF 77. Defendants assert five counterclaims: three for breach of contract, breach of the

17  covenant of good faith and fair dealing, and conversion. Answer and Counterclaims ¶¶ 77-104,

18  ECF 80. This Order addresses the parties' motions *in limine*. For the reasons explained below and

19  on the record at the April 21, 2016 pretrial conference, the motions are decided as follows

20          Plaintiff's Motion *in Limine* No. 1: DENIED.

21          Plaintiff's Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

22          Plaintiff's Motion *in Limine* No. 3: GRANTED.

23          Plaintiff's Motion *in Limine* No. 4: DENIED.

24          Plaintiff's Motion *in Limine* No. 5: DEFERRED.

25          Defendants' Motion *in Limine* No. 1: GRANTED IN PART, DENIED IN PART, and

26                  DEFERRED IN PART.

27          Defendants' Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

28          Defendants' Motion *in Limine* No. 3: GRANTED IN PART and DEFERRED IN PART.

United States District Court
Northern District of California

Defendants' Motion *in Limine* No. 4: DENIED.

Defendants' Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 6: GRANTED.

## I.   FITEQ'S MOTIONS *IN LIMINE*

### A.   FiTeq's Motion *in Limine* No. 1 to Exclude Venture's Direct-Damages Counterclaim.  DENIED.

FiTeq moves to exclude Venture's $11 million direct-damages counterclaim for costs incurred under the parties' Operating Agreement ("OA"). Pl.'s MIL 1, ECF 356. FiTeq argues that the counterclaim's disclosure—on the last day of fact discovery, October 17, 2014—was late, and that the claim lacks evidentiary support because Venture has withdrawn the two witnesses it initially disclosed as experts to support the claim. *Id.* at 2-3. FiTeq additionally seeks $125,873 in fees and costs for the resources it expended to challenge one of the experts. *Id.* at 5.

Venture responds that the timing of its disclosure was harmless because discovery on this issue has been full and complete—including production of all of the documents on which Venture relies for the claim and a deposition.  Defs.' Opp. 1 at 4, ECF 378. In addition, Venture contends that this motion is, in effect, a request for summary judgment on Venture's counterclaim brought without good cause after the Court's December 17, 2015 deadline for hearing dispositive motions. *Id.* at 3; *see also* Scheduling Order, ECF 257. With regard to FiTeq's request for costs and fees, Venture argues that FiTeq failed to comply with Civil Local Rule 37-4, which requires a party moving for sanctions to provide a supporting declaration, file a motion "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate," and set a hearing for the motion. Defs.' Opp. 1 at 5.

The Court agrees with Venture. The time to seek relief was 2014, not now. Even if relief had been appropriate in 2014, more than 18 months have passed since the date of the allegedly late disclosure. The Court also agrees that this motion *in limine* is, in effect, an improper motion for summary judgment. The sufficiency of Venture's evidence is now a question for trial. Finally, the Court finds that this motion is not a proper vehicle for FiTeq's cost and fees request as it does not comply with the civil and federal rules governing motions for sanctions. *See* Fed. R. Civ. P. 37,

United States District Court
Northern District of California

1    Civ. L.R. 37. Accordingly, the Court DENIES Plaintiff's Motion *in Limine* No. 1.

2    **B.    FiTeq's Motion *in Limine* No. 2 to Preclude Testimony of Venture Expert Choo Eng Chuan. GRANTED IN PART and DENIED IN PART.**

3    FiTeq seeks to preclude Choo Eng Chuan, Venture's expert on the Singapore Economic

4    Development Board ("EDB"), from testifying about the EDB's satisfaction with Venture's

5    progress under the terms of the EDB's grant to Venture. Pl.'s MIL 2, ECF 358. FiTeq contends

6    that Mr. Choo lacks foundation for this opinion and cannot rely on his experience with prior EDB

7    cases because he refused to answer any questions about those cases in his deposition. *Id.* Venture

8    responds that Mr. Choo based his opinion on expertise he acquired by advising clients on

9    numerous cases, not any one case or group of cases, in addition to documents specific to this case.

10   Defs.' Opp. 2, ECF 377. Venture contends that Mr. Choo had no Rule 26 obligation to disclose the

11   identities of his former clients or any information relating to those clients' applications.

12   The Court agrees with FiTeq that Mr. Choo's opinions about the EDB's thought process

13   regarding Venture's progress are speculative and lack foundation. Because Mr. Choo was not

14   involved in the EDB's decision-making on the Venture grant, he has no personal knowledge on

15   which to base opinions such as "the EDB was clearly satisfied that there were no further concerns

16   on the IDS awarded to Venture." *See* Exh. D to Pl.'s MIL 2 at 16, ECF 358-5. Accordingly, the

17   Court GRANTS Plaintiff's Motion *in Limine* No. 2 to the extent that it seeks to preclude Mr. Choo

18   from offering his opinion that the EDB was satisfied with Venture's progress. However, Mr. Choo

19   is clearly knowledgeable and experienced in working with the EDB and thus is qualified to testify

20   about the EDB's general practices and procedures and the motion is DENIED to that extent.

21   **C.    FiTeq's Motion *in Limine* No. 3 to Preclude Venture from Arguing Best Efforts. GRANTED.**

22   

23   FiTeq next seeks to preclude Venture from arguing that it was required only to use "best

24   efforts" to meet the milestones specified in the OA. Pl.'s MIL 3, ECF 360. Venture represents that

25   it will not raise this particular argument and therefore does not oppose the motion as it was

26   narrowly articulated at the pre-trial conference. Accordingly, the Court GRANTS Plaintiff's

27   Motion *in Limine* No. 3 to the extent that it seeks to preclude Venture from submitting evidence or

28   argument that it was only required to use best efforts to meet the milestone requirements in one

through four. *See* Transcript at 42:10-21. This ruling does not pertain to claims of fraud or punitive damages.

**D.    FiTeq's Motion *in Limine* No. 4 for Spoliation Instruction. DENIED.**

FiTeq next asks the Court to instruct the jurors that they may presume Venture carried out or allowed the destruction of relevant evidence favorable to FiTeq because Dharma Nadarajah, an executive Vice President at Venture, deleted his FiTeq-related emails shortly after the OA was terminated. Pl.'s MIL 4, ECF 361. FiTeq further argues that the later-produced documents, purportedly the recovered emails, are so slight in number compared to the significant role Mr. Nadarajah had on this project that it is reasonable to infer that additional documents were destroyed. *Id.* at 2-3. FiTeq argues that this sanction is appropriate under either Federal Rule of Civil Procedure 37 or the court's inherent authority. Venture responds that the sanction is not appropriate under either authority. Defs.' Opp. 4, ECF 382.

Recently-amended Rule 37(e), which governs sanctions for failure to preserve electronically stored information ("ESI") provides,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Venture argues that an adverse inference instruction is not proper under this rule for three reasons. First, Rule 37(e) provides for sanctions only where the ESI "cannot be restored or replaced through additional discovery." Here, Venture contends that it restored and produced the emails to FiTeq once it located Mr. Nadarajah's old computer. Defs.' Opp. 4 at 2-3; *see also* Exh. 4 to Pl.'s MIL 4, ECF 361-5. In addition, Venture argues that FiTeq never sought additional or alternative discovery regarding the ESI, such as a deposition of Mr. Nadarajah. Defs.' Opp. 4 at 3.

United States District Court
Northern District of California

1    Second, Rule 37(e) requires a "finding [of] prejudice to another party from the loss of the

2    information" before any sanction can be imposed. Venture argues that FiTeq cannot establish such

3    prejudice because the recovered files were duplicates of documents already produced by both

4    parties as emails sent to other individuals whose ESI was produced. *Id.* at 3; *see also* Jones Decl.

5    to Defs.' Opp. 4 ¶¶ 5-6, ECF 382-4. Third, Venture argues that FiTeq cannot establish "that

6    [Venture] acted with the intent to deprive [FiTeq] of the information's use in the litigation,"

7    because Mr. Nadarajah deleted the emails as part of routine housekeeping. *See* Exh. A to Defs.'

8    Opp. 4 ¶ 2, ECF 382-1.

9         With regard to the Court's ability to impose this sanction under its inherent authority,

10   Venture argues that the Advisory Committee's Notes to Rule 37(e) explicitly foreclose this route.

11   *See* Fed. R. Evid. 37(e) advisory committee's notes (2015 Amendment) ("New Rule 37(e) . . .

12   authorizes and specifies measures a court may employ if information that should have been

13   preserved is lost, and specifies the findings necessary to justify these measures. It therefore

14   forecloses reliance on inherent authority or state law to determine when certain measures should

15   be used.").

16        The Court agrees with Venture. FiTeq has failed to prove that other responsive documents

17   ever existed. Because FiTeq has failed to offer persuasive evidence to show that the ESI was not

18   "restored or replaced through additional discovery"—namely, Venture's production of the

19   emails—the Court DENIES Plaintiff's Motion *in Limine* No. 4.

20        **E.    FiTeq's Motion *in Limine* No. 5 to Exclude N.K. Thian Disavowed Testimony on
          Counterclaim Damages and Alleged FiTeq Misrepresentations. DEFERRED.**

21        FiTeq's final motion *in limine* seeks to exclude any testimony by N.K. Thian, Venture's

22   Chief Technology Officer, on (1) FiTeq's alleged misrepresentations to Venture and (2) Venture's

23   counterclaim damages. Pl.'s MIL 5, ECF 362. With regard to the alleged misrepresentations,

24   FiTeq contends that Mr. Thian disclaimed any knowledge of the subject in his depositions. *Id.* at

25   1-3. For example, Mr. Thian responded to "In your view, did FiTeq make misleading

26   representations to Venture?" with "I do not know." Exh. B to Pl.'s MIL 5 at 218:13-16, ECF 362-

27   3. When asked to "tell [counsel] everything you know about any material breach of the operating

28

1    agreement by FiTeq," Mr. Thian testified, "It's outside the scope, as my counsel says." Exh. A to

2    Pl.'s MIL 5 at 13:14-15:21, ECF 362-2.

3         Venture responds that this reflects Mr. Thian's ignorance of the legal concepts surrounding

4    the misrepresentations, not the facts. Defs.' Opp. 5 at 4, ECF 383. Venture notes, for example, that

5    while Mr. Thian testified, "I do not know what qualifies as misrepresent, misleading," he

6    identified statements FiTeq made to Venture that "as it turned out, [were]n't correct." Exh. 6 to

7    Defs.' Opp. 5 at 217:19-20, 218:5-11, ECF 383-6. The Court agrees with Venture and finds that

8    Mr. Thian's responses show that he lacked understanding of the legal terms, not the underlying

9    facts.

10        With regard to Venture's counterclaim, FiTeq argues that it never had the opportunity to

11   question Mr. Thian on the topic because Venture never disclosed him as a witness for the claim

12   and blocked FiTeq's attempts to ask about the damages at Mr. Thian's fourth deposition. Pl.'s

13   MIL 5 at 4. Venture responds that FiTeq has known since before discovery began that Mr. Thian

14   is knowledgeable on the subject of Venture's OA expenses. Defs.' Opp. 5 at 1-4. Venture points to

15   § 3.1(c)(ii) of the 2009 OA, which provides that "[o]n a monthly basis, Venture's CTO [Mr.

16   Thian] and FiTeq's CEO will meet to review expenses incurred by Venture since the inception of

17   the engineering services on each of the Milestones in the SOW. The review will be to track the

18   allocation of dollars spent on each of the Milestone tasks." Exh. 2 to Defs.' Opp. 5 § 3.1(c)(ii),

19   ECF 383-2. Venture contends that Mr. Thian's knowledge was additionally disclosed in discovery

20   through documents, such as purchasing proposals that required Mr. Thian's approval, *see* Exh. 4

21   to Defs.' Opp. 5, ECF 383-4, and Mr. Thian's deposition testimony regarding his authority to

22   approve spending, *see* Exh. 8 to Defs.' Opp. 5 at 148:14-149:7, ECF 383-8. Finally, with regard to

23   Mr. Thian's fourth deposition, a Rule 26(a)(2) deposition limited to Mr. Thian's technical

24   expertise, Venture explains that its counsel objected to questions regarding the counterclaim

25   damages because they were beyond the scope of the deposition. *See* Exh. 11 to Defs.' Opp. 5 at

26   16:8-17:7, ECF 383-11.

27        The Court DEFERS ruling on Plaintiff's Motion *in Limine* No. 5, finding the request too

28   broad for determination at this stage. In general, Mr. Thian shall be precluded from testifying to

any specific questions to which he responded "I don't know" or about which he claimed he would not testify in his depositions. In other words, Mr. Thian will not be allowed to testify on topics he shut down. Similarly, Mr. Thian shall be foreclosed from giving expert testimony on topics he said exceeded the scope of his Rule 26(a)(2) disclosure, but is not necessarily precluded from acting as a lay or percipient fact witness on those issues. Plaintiff may make specific objections at trial.

## II.    VENTURE'S MOTIONS *IN LIMINE*

### A.    Venture's Motion *in Limine* No. 1 to Exclude Evidence and Argument Concerning Unrelated Cards and Technology. GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Venture moves the Court to exclude evidence and argument concerning cards and technology not related to the card contemplated by the OA ("OA Card"). Defs.' MIL 1, ECF 363. Venture separates this request into four issues. *Id.*

First, Venture moves to preclude FiTeq from representing that its technology is used in "over 100 million US Contactless Cards" and that the "FiTeq EMV Card is already in use in over 100 million U.S. cards issued under the American Express, Discover, MasterCard, and Visa brands." Defs.' MIL 1 at 4. Venture argues that FiTeq has offered no evidence that any technology at issue in this case is used in any payment card on the market and contends that FiTeq's representations about contactless cards that use its technology would be irrelevant and misleading as this case concerns a swipe card. *Id.* at 4-5. FiTeq responds that evidence of its success outside of the OA Card is relevant as background about it as a company and that, because every major issuing network uses FiTeq's technologies for contactless security transactions, such transactions "certainly exceed over 100 million over the last several years." Pl.'s Opp. 1 at 5, ECF 373.

The Court agrees with FiTeq regarding the potential relevance of these representations, but finds the record before it insufficient to determine whether or not FiTeq can offer sufficient proof to support these representations of success. Accordingly, the Court DEFERS ruling on Defendants' Motion *in Limine* No. 1 to the extent that it seeks to exclude argument and evidence that FiTeq's technology is used in hundreds of millions of cards. The Court will allow FiTeq to reference its success outside of the OA Card as part of its company overview, but only if it lays a proper foundation for the evidence. Similarly, should FiTeq seek to argue that the technology at

issue in this case is used elsewhere, it must first lay a foundation to establish that the technology is the same. Defendants may object at trial based on the questions asked.

Second, Venture seeks to exclude evidence and argument concerning alleged customer interest in the OA Card because it is only probative of FiTeq's lost profits claims, which have been excluded,[1] and because the expressed interest was for cards that had displays, ATM functionality, and/or track 1 data—all features that the OA Card lacked. Defs.' MIL 1 at 3. Venture's third request, to exclude evidence or argument related to FiTeq's now-terminated contract with Discover, similarly stems from the argument that Discover was interested in a card that, unlike the OA Card, was contactless and had a visual display and Track 1 data. *Id.* at 3. In addition, Venture contends that the Discover contract is irrelevant because it post-dates Venture's involvement with the OA Card. *Id.*

FiTeq responds that evidence of market demand is relevant not only for lost profits, but also for the likelihood that the card could have obtained certification through network waivers of certain requirements. Pl.'s Opp. 1 at 3-4. And FiTeq explains that demand for cards with ATM functionality, track 1 data, and a display goes to market demand for the OA Card because the OA contemplated the two former features and the parties planned to include a display later in the product pipeline, as shown by Venture's counterclaim for the cost of display card parts. *Id.* at 1-2.

With regard to demand for a display card, the Court agrees with Venture. The parties agree that the OA did not contemplate a display card and the Court therefore finds that demand for such cards is irrelevant to FiTeq's claims. Thus, Defendants' Motion *in Limine* No. 1 is GRANTED to the extent that it seeks to exclude evidence and argument regarding customer interest in display cards. FiTeq may not offer such evidence or argument in its case in chief, but if Venture opens the door to such evidence, FiTeq may follow.

In contrast, the parties actively disagree about whether ATM functionality and track 1 data were waived or deferred as requirements for the OA Card. *See* Order Granting in Part and

---

[1] Venture argues that the Court excluded FiTeq's lost profits claim in the Order Granting Motion to Exclude Testimony About FiTeq's Alleged Lost Profits and Valuation. *See* Defs.' MIL 1 at 2. While this misreads the order, Venture's argument stands because the Court excludes FiTeq's lost profits claims in this order, as discussed in detail below under Venture's Motion *in Limine* No. 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Denying in Part Defendants' Motion for Summary Judgment, ECF 351. That distinction remains a

2  question for the jury. Accordingly, the Court DENIES Defendants' Motion *in Limine* No. 1 to the

3  extent that it seeks to exclude evidence and argument about customer interest in cards with ATM

4  functionality and track 1 data.

5       Finally, Venture seeks to preclude evidence or argument regarding Apple Pay's supposed

6  use of FiTeq's contactless technology. Defs.' MIL 1 at 3. Venture contends that FiTeq has

7  disclosed no supporting evidence for this claim and that any testimony regarding Apple Pay's

8  purported use would be misleading, confusing, and unduly prejudicial under Rule 403, particularly

9  given Apple Pay's positive reputation. *Id.* at 1, 3. FiTeq responds that it disclosed Apple Pay's use

10  of FiTeq's technology in discovery. Pl.'s Opp. 1 at 4-5.

11      Because the parties disagree as to whether or not evidence supporting Apple Pay's use of

12  FiTeq technology was produced in discovery and have failed to offer the Court any evidence upon

13  which to make the determination, the Court DEFERS ruling on Defendants' Motion *in Limine* No.

14  1 to the extent that it seeks to preclude evidence and argument regarding Apply Pay's use of FiTeq

15  technology. In order to introduce this evidence at trial, FiTeq will have to specifically identify the

16  documents it produced in discovery linking Apple Pay to FiTeq's technology.

17  **B.  Venture's Motion *in Limine* No. 2 to Exclude Evidence and Related to Test Reports**
18  **and Summaries, Innovatier's Gift Cards, and Lost Profits. GRANTED IN PART and**
    **DENIED IN PART.**

19      Venture next moves to exclude evidence and argument related to (1) tests performed on

20  FiTeq's cards by third party labs, (2) Innovatier's gift cards, and (3) FiTeq's alleged lost profits.

21  Defs.' MIL 2, ECF 364. Venture argues that the test reports and summaries, attached as Exhibits

22  A and B to its motion, should be excluded as inadmissible hearsay because FiTeq has not

23  disclosed any witness who could authenticate or lay foundation for the reports and because they

24  were created for litigation. In addition, Venture argues that the reports are misleading because

25  various "pass" ratings misconstrue underlying failures. *Id.* at 1-2.

26      FiTeq does not oppose exclusion of the report attached as Exhibit B and withdraws it as a

27  trial exhibit. Pl.'s Opp. 2 at 1, ECF 376. However, FiTeq opposes exclusion of Exhibit A, *see* ECF

28  364-1, because, FiTeq argues, it qualifies for the business records exception to the hearsay rule

United States District Court
Northern District of California

and FiTeq's CEO, Joan Ziegler, has the personal knowledge necessary to authenticate and lay the foundation for the report.  Pl.'s Opp. 2 at 1. In addition, FiTeq offers an e-mail from Ms. Ziegler to demonstrate that the reports were prepared in the normal course of business. *See* Exh. D to Pl.'s Opp. 2, ECF 376-3.

The Court agrees with FiTeq. The reports are admissible as business records because they were not obtained for litigation purposes. Accordingly, the Court DENIES Defendants' Motion *in Limine* No. 2 to the extent that it seeks to exclude evidence and argument related to the test reports and summaries.

Venture next seeks to exclude testimony about Innovatier's gifts cards, which it argues differ in significant ways from the OA card. Defs.' MIL 2 at 2-3. For example, gift cards are neither certified nor regulated by payment networks; they need not be made at a certified facility; they do not contain dynamic mag stripe technology; they do not require authenticator software to function; and they are not personalized in the same way as payment cards. *Id.* As a result, Venture contends that testimony about the gift cards is irrelevant and would confuse the jury.

FiTeq responds that it will offer evidence regarding the gift cards only to show that Innovatier's reaction injection molding process works for encapsulation—required for both gift and pay cards—while Venture's lamination method did not. Pl.'s Opp. 2 at 3.

The Court agrees that encapsulation is central to this case. Accordingly, the Court DENIES Defendants' Motion *in Limine* No. 2 to the extent that it seeks exclusion of evidence and argument regarding gift cards. The Court will allow a limiting instruction to inform the jury that the gift card evidence is relevant only to encapsulation. If Venture wishes to show that the encapsulation process for a gift card and a payment card differ, it may use cross examination to do so.

Finally, Venture moves to preclude FiTeq from arguing its lost profits claim because the Court previously excluded the only computation FiTeq disclosed for this claim in its Rule 26 damages disclosure. Defs.' MIL 2 at 4. FiTeq responds that, while the Court excluded testimony from Joan Ziegler and FiTeq CFO Bill Carson on lost profits/valuation and their lost profits/valuation models, it may introduce other evidence of lost profits it disclosed under Rule 26, including evidence regarding market demand for the OA Card. Pl.'s Opp. 2 at 4.

United States District Court
Northern District of California

The Court agrees with Venture. Rule 26 requires that parties disclose "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). While Plaintiff may have disclosed other evidence of market demand, it did not offer any computation for lost profits that has not been excluded. Thus, pursuant to Rule 37(c), the Court GRANTS Defendants' Motion *in Limine* No. 2 to the extent that it seeks exclusion of evidence and argument on FiTeq's lost profits.

### C. Venture's Motion *in Limine* No. 3 to Exclude Testimony, Evidence, and Argument Relating to Venture's Dealings with the Singapore Economic Development Board. GRANTED IN PART and DEFERRED IN PART.

Venture next moves to exclude evidence, testimony, and argument related to Venture's dealings with the EDB, including any contention that Venture concealed information from, or misrepresented information to, the EDB or that Venture stole FiTeq's grant. Defs.' MIL 3, ECF 365. FiTeq does not intend to make the latter argument. Pl.'s Opp. 3 at 1, ECF 370. Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 3 to the extent that it seeks to preclude FiTeq from offering evidence or argument that Venture stole FiTeq's EDB grant.

However, FiTeq opposes exclusion of evidence regarding Venture's purported misrepresentations to the EDB. While Venture argues that such evidence will amount to impermissible character evidence under Rule 608(b), FiTeq responds that it intends to offer such evidence to show Venture's motive, intent, absence of mistake, and plan as permitted by Rule 404(b) and to impeach Venture's witnesses should they claim that Venture's performance under the OA was impossible. Pl.'s Opp. 3 at 1.

"In the Ninth Circuit, a four-part test is used to determine the admissibility of evidence pursuant to Rule 404(b): 'Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.'" *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *U.S. v. Romero,* 282 F. 3d 683, 688 (9th Cir. 2002).

Here, the parties dispute whether the third and fourth element are satisfied. *See* Defs.' Supp. Brief, ECF 399; Pl.'s Supp. Opp., ECF 400. Venture contends that, to show that Venture committed the other act—specifically, that it misled the EDB—and that the act was similar to the

11

purported misconduct here, FiTeq would have to prove what the EDB's grant conditions mean under Singapore law, what the EDB considers completion, and what Venture actually represented to the EDB. Defs.' Supplemental Brief at 1. Venture argues that FiTeq will be unable to make this showing because the EDB benchmarks differed from the OA milestones. Venture submits a table to highlight the differences. *See* Exh. 1 to Defs.' Supp. Brief, ECF 399-1. FiTeq responds that Venture's representations to FiTeq and the EDB were essentially identical and it too provides a table to support its point. *See* Exh. A to Pl.'s Supp. Opp., ECF 400-2.

Venture additionally argues that, even if the evidence were to qualify under Rule 404(b), it should nevertheless be excluded under Rule 403. *See* Defs.' Supplemental Brief. Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Venture argues that the probative value of any misrepresentations to the EDB would be minimal: telling consistent stories to two entities is as indicative of knowingly telling lies as it is of the belief that one is telling the truth. Defs.' Supp. Brief at 2. On the other hand, Venture contends that introducing the evidence would necessitate a mini-trial regarding Venture's interactions with the EDB, which would waste time and likely mislead the jury. *Id.*

The Court agrees with Venture's last argument regarding the admissibility of the evidence for 404(b) purposes, but not for impeachment. With regard to Rule 404(b), even if Venture's purported misrepresentations to the EDB were admissible to show motive, absence of mistake, or plan, the time the parties would have to expend to establish the meaning of Venture's statements to the EDB substantially outweighs the limited probative value of the evidence. The fact that each party submitted a table comparing and contrasting the statements made to FiTeq and the EDB only highlights the time that such argument would consume at trial. On the other hand, the probative value for 404(b) purposes is minimal because, regardless of whether or not Venture misled the EDB, FiTeq must prove that Venture lied to FiTeq and proof that Venture told a consistent story does not make the story any more or less likely to be false.

For purposes of impeachment, however, the 403 balance tips in the other direction. If, for

example, Venture argues that its performance of the OA milestones was impossible, any representations it made to the EDB that it had successfully completed those milestones would be highly probative of the validity of that defense. The Court agrees with Venture that the time necessary to establish the precise meaning of Venture's representations to the EDB may be significant, but finds that it does not outweigh the high probative value of the evidence for impeachment purposes.

Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 3 to the extent that it seeks to preclude the use of this evidence for any purpose other than impeachment and DEFERS ruling on the admissibility of this evidence for impeachment.

### D. Venture's Motion *in Limine* No. 4 to Exclude Onions and Testimony of Plaintiff's Expert Jill Kennedy. DENIED.

Venture next moves to exclude the testimony, opinions, and expert report of Jill Kennedy, one of FiTeq's experts on damages, regarding: (1) FiTeq's expenses in the OA and post-OA time periods, (2) the value of Venture's FiTeq stock, and (3) the value of the shares FiTeq paid to acquire Innovatier's assets. Defs.' MIL 4, ECF 366. Venture argues that these opinions are inadmissible under Rule 702 because Ms. Kennedy performed simple arithmetic, which does not require scientific or specialized knowledge, and used unreliable underlying numbers without auditing or independently calculating them. *Id.* at 1-2. In addition, Venture contends that Ms. Kennedy's opinions should be excluded under Rule 403 because the jury may give them undue weight as expert opinions and they offer no probative value because they do not opine on causation. *Id.* at 5. FiTeq responds that Venture mischaracterizes the substantial expertise Ms. Kennedy applied to reach her opinions and contends that the rules of evidence would have prohibited Ms. Kennedy from opining on legal matters such as causation. Pl.'s Opp. 4 at 1-2.

The Court finds that Ms. Kennedy's testimony is appropriately offered by an expert and Defendants' other concerns are the proper subject of cross-examination. Accordingly, the Court DENIES Defendants' Motion *in Limine* No. 4.

### E. Venture's Motion *in Limine* No. 5 to Exclude Opinions and Testimony of Plaintiff's Expert Jeff Leitzinger. GRANTED IN PART and DENIED IN PART.

Venture next seeks to exclude the opinions and testimony of Plaintiff's expert, Jeff

United States District Court
Northern District of California

1    Leitzinger, regarding (1) market demand—specifically, that "one would expect the fraud reduction

2    benefits of FiTeq's cards to generate significant interest," that "there is market demand for

3    solutions to the fraud problems posed by the use of magnetic strip readers," and that "FiTeq offers

4    such a solution"—and (2) the cost of financing. Defs.' MIL 5 at 1-2, ECF 367 (quoting Exh. B to

5    Defs.' MIL 5 ¶¶ 5, 23, ECF 367-3). Venture argues that the market demand opinions must be

6    excluded under Rule 702 because they are neither relevant, as they are evidence of FiTeq's

7    excluded lost profits claim, nor reliable, as Dr. Leitzinger is not an expert in the payment card

8    industry and his methodology is not based on valid scientific principles. *Id.* at 1. In addition,

9    Venture seeks to exclude Dr. Lietzinger's financing opinions because they are the result of simple

10   arithmetic applied to assumptions provided by FiTeq and do not segregate incremental costs for

11   damages caused by Venture from FiTeq's base financing costs. *Id.* at 4-5.

12         Plaintiff responds that Dr. Leitzinger's qualifications as an expert on economics qualify

13   him to opine on market demand and that such an opinion is relevant not only to lost profits, but

14   also to the likelihood that FiTeq could get variances from certification requirements and to

15   multiple Venture defenses that FiTeq misrepresented market demand. Pl.'s Opp. 5 at 1, ECF 381.

16   With regard to the financing cost opinions, FiTeq contends that Dr. Leitzinger's work involved

17   substantially more than "basic arithmetic" and that it was necessary to lay the costs out in a

18   comprehensive fashion for the jury. *Id.* at 1, 3-4. Finally, as with Ms. Kennedy, FiTeq responds

19   that it would have been improper to ask Dr. Leitzinger to opine on legal causation. *Id.* at 4-5.

20         With regard to the market demand opinions, the Court finds that nothing in Dr.

21   Leitzinger's report or deposition lays the foundation for his opinions. Instead, the opinions appear

22   to be pure speculation or to be offered at such a high level of generality as to be meaningless.

23   Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 5 to the extent that it seeks to

24   exclude Dr. Leitzinger's testimony regarding market demand.

25         With regard to the financing cost opinions, the Court agrees with FiTeq. Dr. Leitzinger's

26   calculations go beyond simple arithmetic and constitute proper Rule 702 testimony. The parties'

27   disagreement with regard to whether Dr. Leitzinger's opinion reflects the incremental cost of

28   financing caused by Venture or FiTeq's full cost of financing at that time is the proper subject of

cross-examination. Accordingly, the Court DENIES Defendants' Motion *in Limine* No. 5 to the extent that it seeks to exclude Dr. Leitzinger's testimony regarding financing costs.

### F. Venture's Motion *in Limine* No. 6 to Allow Business Record Certification in Lieu of Testimony. GRANTED.

Finally, Venture moves for an order that the Certification of Ju Lin Lim, *see* Exh. 1 to Defs.' MIL 6, ECF 394-1, satisfies Federal Rules of Evidence 902(11) and (12) and establishes that the documents attached to the Certification are authentic business records that qualify for the exception to hearsay under Rule 803(6). Defs.' MIL 6, ECF 394. FiTeq does not dispute that Venture has complied with Rules 803(6), 902(11), and 902(12). Pl.'s Opp. 6, ECF 401. However, FiTeq contends that the documents should nevertheless be excluded under Rule 403 because, if FiTeq has no opportunity to cross-examine any witness at trial as to the contents of the documents, they will be more prejudicial than probative. *Id.* at 1.

The Court is asked to make a very narrow ruling to free Ms. Lim from having to travel from Singapore in order to authenticate the documents under Rule 902—a ruling that FiTeq does not oppose. Accordingly, the Court GRANTS Defendants' Motion *in Limine* No. 6. However, this ruling on the documents' authenticity does not determine their admissibility under Rule 403.

Because Venture has not had an opportunity to respond to the 403 challenge, the Court declines to rule on the admissibility of the documents at this stage. Having reviewed the documents, however, the Court notes that FiTeq has raised numerous issues that could be significant barriers to admissibility. Standing alone, the document—which is nearly illegible, contains numerous "totals," offers no explanation for what appears to be a summary on the opening page, and generally fails to even list the currency of measurement—may prove impenetrable to the jury.

**IT IS SO ORDERED.**

Dated: April 28, 2016

BETH LABSON FREEMAN
United States District Judge